OPINION OF THE COURT
Evans V. Brewster, S.
This application is for the withdrawal of funds deposited with the Comptroller of the State of New York pursuant to a decree of this court dated December 28, 1973 to be held for the benefit of the person or persons who may thereafter *261 appear to be entitled thereto. The petitioner is the attorney in fact for Sigrid Morscheck who claims the entire fund.
The estate has had a long history of litigation. Decedent died on January 17, 1968 and letters of administration were issued to the Public Administrator on November 5, 1969. In his final accounting the Public Administrator alleged that the distributees of decedent were unknown. Objections were filed on behalf of Sigrid Morscheck, the only child of Lydia Louise Krueger, nee Kasperson, now deceased, who claimed she was decedent’s sole surviving distributee. A careful preliminary investigation produced sufficient facts to warrant the issuance of an open commission to the Federal Republic of Germany where testimony of several witnesses was taken. The testimony revealed that Lydia Louise Krueger, nee Kasperson, had a sister, Emma Alice Kasperson, who eloped with a Russian officer around 1917 and left Riga, Latvia, for Russia and whose whereabouts were unknown. There was no competent evidence that Emma and her Russian paramour were ever married. Further testimony indicated that while there was a close, friendly relationship between Emma and Lydia and their uncle Oskar Dehn (the father of this decedent) with whom they lived, the only communication received from Emma after she left was a letter mailed from St. Petersburg about the end of World War I. Emma wrote that she regretted leaving Riga and was in a bad situation, didn’t have any clothes and was very ill. All means to communicate with her failed.
Prior to the scheduled kinship hearing on the accounting, a settlement was reached between the parties, the terms of which were approved by the court and incorporated in the decree of December 28, 1973 settling the account. Under the settlement agreement, it was provided that:
"fourth: Lydia Louise Krueger, nee Kasperson, was a distributee of Edgar Dehn, deceased, to wit, a first cousin, and said Sigrid Morscheck her daughter, is her sole heiress and legal representative.
"fifth: on the basis of the proof adduced to date, Lydia Louise Krueger, nee Kapserson, deceased, was entitled to receive as such distributee one-half (Vi) of the estate of such Edgar Dehn, deceased, and said Sigrid Morscheck, her daughter, is entitled to said one-half (Vi) as her sole heiress and legal representative * * *
"eighth * * * C. The balance remaining after the payments *262 on distribution provided for in subparagraphs 'A’ and ,'B’ of this paragraph, shall be deposited with the Comptroller of the State of New York, subject to the further order of the Court, pursuant to section 2222 of the Surrogate’s Court Procedure Act, to be held for the benefit of the person, or persons who may thereafter appear to be entitled thereto.
"ninth: In the event that the said Sigrid Morscheck or any person succeeding to her interest, makes application for the withdrawal of any funds deposited with the Comptroller of the State of New York, pursuant to this stipulation, she shall offer as part of her proof, the transcript of the testimony taken in the proceedings held in Germany pursuant to the order of this Court dated June 9, 1972, including all doucments offered thereat. Such offer shall, however, be subject to rulings by the Court hearing such application on the objections contained in said transcript. The said Sigrid Morscheck, for herself and her successors in interest agrees that she shall not be entitled to recover any of said deposited funds unless she presents competent proof additional to any proof contained in the said transcript as to the devolution of the interest, if any, of her sister, Emma Alice Kasperson.”
Thereafter, chapter 156 of the Laws of 1975 was enacted which added a new section to the SCPA in relation to the determination of the distributees of a decedent (SCPA 2225). "The statute [was] designed to do substantial justice and enable the court to direct an appropriate and full distribution, if possible, of intestate property of a decedent after the lapse of five years from his death when, as frequently happens, it is impossible to ascertain whether certain known or possible unknown distributees are alive and can be located.” (Matter of Russo, 91 Misc 2d 984, 985.) Procedurally, SCPA 2225 requires that the petition request the court to adjudge that "(a) a person who might otherwise be a distributee is dead or (b) that no distributee other than those stated in the record exists. Citation shall issue to the person named and to unknown distributees of the decedent, if any.” It further provides that if the court is satisfied (1) that a person who would be a distributee has not been heard of for at least five years since the death of decedent, and that a diligent search has failed to uncover evidence that such person is still living, the court may make a determination that such person is presumed dead and that he predeceased the decedent without issue; or (2) that if diligent and exhaustive efforts have been *263 made from all available sources to ascertain the existence of distributees and at least five years have elapsed since the death of decedent, and that the parties before the court know of no distributees other than those in the record and no claim to a share of the estate has been made by any person whose relationship has not been established in the record, the court may make a determination that no distributee or class of distributees exists other than those whose status is established in the record before the court.
Armed with the provisions of the new statute, a petition to withdraw funds from the Comptroller of the State of New York was filed on January 14, 1976 in which it was alleged not only that Lydia Louise Krueger, nee Kasperson, was the only distributee of the decedent, but also that her sister, Emma Alice Kasperson, had predeceased the decedent. Petitioner requested that the money on deposit be paid to the sole heir of the sole known distributee of the decedent.
A citation was duly issued to Emma Alice Kasperson, whose whereabouts were unknown and if deceased to all who would take through her. Publication of the citation was ordered in two foreign language newspapers whose circulation among Latvians and Russians was global. (Parenthetically it is noted that an inquiry was received from Australia but upon investigation failed to show any relationship.) The citation complied with the provisions of SCPA 306 as well as 2225 in all respects. Concededly, more than five years had elapsed since the death of decedent. The petitioner therefore had the burden to proved that a diligent search had been made to find Emma Alice Kasperson and that no such evidence had been found so that the court could made a determination that she was dead or that a diligent and exhaustive effort had been made to ascertain distributees of the decedent, and none was found other than the petitioner herein.
In pursuance of the burden placed upon her, petitioner requested and obtained another open commission to the Federal Republic of Germany. Witnesses were again extensively examined to establish that a thorough and exhaustive search had been made for the missing Emma Alice Kasperson. Objections to the testimony taken on both the 1972 and 1976 commissions were withdrawn by all the parties leaving it to the court to appraise the weight and relevancy of the same.
One of the witnesses, who had lived for a while as a boarder in the home of Oskar Dehn in Latvia and later as a neighbor *264 at the same time Lydia and Emma lived there, testified to the close and friendly relationship of the family, as well as to the only communication received from Emma describing her wretched condition in St. Petersburg and her regret at having left their home. He also testifed to the futile efforts of the family to find Emma. While the court can and does take judicial notice of historical events (Matter of Regas, 79 Misc 2d 170), nevertheless a professor of the history of the Russian Revolution from the University of Heidelberg testified to the statistical and historical background and events extant during the Russian Revolution. He described the disruption of postal and railroad communication during this period and among other things testified to the shrinkage of the population in St. Petersburg from 2,740,000 in 1917 to approximately 720,000 in 1920 as a result of epidemics of cholera, typhus and influenza, fuel shortages, famine, political upheaval and civil war. Another witness who lived in St. Petersburg at the time of the. Russian Revolution described the chaotic, riotous mob action, cold and famine existing at that time.
With respect to record keeping in Russia, the testimony shows that until 1925, records of births, marriages and deaths were maintained by the church. The destruction of large numbers of churches during the civil turmoil surrounding the Russian Revolution also accounted for the loss of many church records of vital statistics. However, the records of vital statistics in Riga, Latvia were reasonably complete but only the birth record of Emma . Alice Kasperson was found. Testimony with respect to records of the Heimatortskartei (H.O.K.), an organization founded after World War II to help displaced persons, mainly emigrés from Russia who formerly resided in the Baltic countries to find their relatives was presented. The records contained the names not only of the emigrés but also information given by the emigrés about former Balkan persons known by them to be alive and their location. However, the records failed to establish that Emma Alice Kasperson had returned from Russia. Further, none of those returning knew of her. The independent search of the guardian ad litem of records for this period now maintained in Leipzig, Germany, as well as searches made by others, newspaper ads, and the separate investigation made by Inurcollegia to discover some clue as to the existence of Emma Alice Kasperson, have all been considered by the court.
It appears to the court that the very remote possibility, with *265 no meaningful support in the record, that Emma Alice Kasperson survived the decedent herein, should not impede the distribution of the estate (Matter of Riley, 24 AD2d 630). In invoking SCPA 2225, "[i]t is also to be emphasized that distribution is not automatic and that the court must be satisifed that diligent (exhaustive) efforts have been made to locate the missing distributee(s). The prime purpose of the legislation is also to avoid escheat to the State and thereby prevent injustice to the decedent’s distributees.” (Matter of Russo, 91 Misc 2d 984, 987, supra.)
Emma Alice Kasperson, the missing distributee, has been heard from only once since leaving home in 1917, more than 60 years ago. Proof of the diligent and exhaustive search for her whereabouts from all available sources has been presented to the court. No evidence has been found that she is still alive and no claim to the estate has been made by any person other than the petitioner herein.
Accordingly, the court can and does presume Emma Alice Kasperson to.be dead and that she predeceased the decedent. The court, therefore, concludes that the only distributee of the decedent is the petitioner herein and her request for the withdrawal of the funds on deposit with the Comptroller of the State of New York as the person entitled thereto is granted.